IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 25-mj-172 |
| : | |
| JOSHUA MATTHEW LITTLE, : | |
| : | |
| *Defendant*. : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that defendant Joshua Matthew Little be detained pending trial. The defendant should be detained pursuant to 18 U.S.C. § 3142(e)(1) because there are no conditions or combination of conditions that will reasonably assure the appearance of the Defendant as required and the safety of any other person and the community. Where, as here, the defendant not once but twice tries to flee from law enforcement officers and not once but twice uses a car as a deadly weapon against those officers, the conclusion that the Defendant is a danger and a flight risk is beyond reasonable dispute.

**FACTUAL BACKGROUND**

**Offense on August 22, 2025 – 18 U.S.C. § 111(a), (b)**

On August 22, 2025, at approximately 2130 hours, Homeland Security Investigations (HSI), the United States Marshals Service (USMS), the United States Secret Service (USSS), the Federal Bureau of Investigation (FBI), the DC Metropolitan Police Department (DCMPD), and the United States Park Police (USPP) were patrolling the area of Minnesota Avenue NE and Blane Street NE, Washington, DC 20019, a location known for high drug activity.

At approximately 2138 hours, in the Citgo parking lot at 3820 Minnesota Avenue, NE, Washington, DC 20019, USMS Agents observed possible drug activity involving the person in

the driver's seat of a dark grey Toyota Camry (later identified as Joshua Matthew LITTLE (PDID; 652961, DOB: 1993-03-04)) and an unknown subject on foot carrying a backpack. The license plate on the Camry was a Maryland tag 2GN4234. The Camry was being driven by LITTLE. LITTLE was clearly visible in surveillance video from the scene (obtained from Citgo) shortly before the incident when he momentarily got out of the Camry before the agents arrived.



Figures 1 and 2 – Joshua Matthew Little and unknown subject handoff of unknown product

In addition, the license plate came back to the Enterprise Rent-A-Car company. According to Enterprise's records, the grey Camry was rented to Wanda Little-Grey (DOB 08/06/1957), residence 6732 Darby Road, Hyattsville MD. The Camry was rented until Aug 24, 2025. Little-Grey appears to be LITTLE's mother.

After witnessing the suspected illegal activity, officers and agents began moving quickly through the parking lot to question and detain the individuals involved.

The grey Camry was stopped at one of the gas pumps. LITTLE was in the driver's seat and an unknown female was in the front passenger seat. Several agents entered the Citgo wearing clothing identifying them as police. After several of the agents – easily visibly identifiable as police – passed by the front of the Camry, LITTLE attempted to leave the parking lot by driving the car out through the exit. HSI Special Agent Michael Grys encountered the Camry at the exit. The agent attempted to stop the vehicle by standing in front of the vehicle and

shouting and signaling with a flashlight for the driver, LITTLE, to stop. Instead, the Camry accelerated out of the parking lot, struck HSI Special Agent Grys, and fled the scene. The agent suffered an injury to his left leg.



Figures 3 through 9 – Joshua Matthew Little assaulting and striking HSI Special Agent Grys with his vehicle.










**Offense on August 23, 2025 – 18 U.S.C. § 111(a), (b)**

On August 23, 2025, the next day, at 3200 Minnesota Avenue, SE, Washington, DC, the same grey Camry was spotted by the U.S. Marshals and two Metro transit officers in three vehicles. LITTLE was again driving the Camry. LITTLE's Camry was stopped at an intersection of Minnesota Avenue and Randle Circle in Southeast, Washington, DC. The Marshals (using two SUVs and a pickup truck) surrounded and blocked the Camry in at that intersection in an attempt to stop it and arrest LITTLE. All of the vehicles had their emergency lights on and the positioning of the SUV and other vehicles made it obvious that they were attempting to box in and stop the Camry. All of the Marshals and the two Metro transit officers then got out of their vehicles. All were clearly marked as law enforcement officers and the two Metro Transit police officers were in their full uniforms. As the lights from the surrounding vehicles continued to flash, the agents then issued commands to the driver to stop, get out of his car.

Nonetheless, using the Camry, LITTLE then tried to escape the Marshals by rocking the Camry back and forth and then ramming one of the Marshals' SUVs in the open front and rear

7

driver's side door, damaging both doors. Deputy Marshal Daniel Benson was trying to get out of the rear driver's side door when LITTLE started to ram the SUV. Deputy Marshal Benson had to jump up onto the hood of the Camry to avoid being pinned between the Camry and the law enforcement vehicles. Agents on scene had to deploy their tasers on LITTLE to get him to stop ramming the Marshals' SUV and trying to escape the scene.

Mr. Little appeared to be intoxicated and numerous open liquor bottles were clearly visible in the Camry. The positioning of the cars following LITTLE's striking the Marshals' SUV is depicted in photographs below.



Figures 10 through 12 – Joshua Matthew Little's Camry after assaulting and striking the U.S. Marshals' SUV





LITTLE was placed under arrest. LITTLE refused to identify himself and was not carrying any identification. Officers confirmed his identity by comparing him to a photo from a previous arrest (see below).



## PROCEDURAL BACKGROUND

On August 25, 2025, the defendant was charged by Complaint for violations of 18 U.S.C. §§ 111(a)(1) (Assault of a Federal Officer) and (b) (Assault of a Federal officer Using a Deadly Weapon - Vehicle). Law enforcement arrested the Defendant on these charges on August 26, 2025. He had his initial appearance before the Honorable Magistrate Judge Matthew J. Sharbaugh that same day. The Court granted the government's oral motion for temporary detention and set the defendant's detention hearing for August 28, 2025.

## LEGAL STANDARD

The Bail Reform Act requires pretrial detention where a court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §§ 3142(e), (f). In making that determination, a court must consider "(1) the nature and circumstances of the offense charged . . .

(2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g).  Upon motion of the government, the court may detain a defendant before trial in a case that involves "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46," *id.* § 3142(f)(1)(C), or "any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm or destructive device . . ." *Id.* § 3142(f)(1)(E).

The government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight – even where it is presumed that those standards are satisfied.  Relevant to that ultimate determination are the usual factors under 18 U.S.C. § 3142(g) – namely: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's past conduct and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Detention pending trial must be ordered if the court finds by clear and convincing evidence that "no conditions placed upon [the defendant's] release would reasonably assure the safety of the community." *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).  A review and understanding of the facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the safety of other persons or the

11

community.  *See* 18 U.S.C. § 3142(f).  Therefore, the government respectfully submits that the Court must detain the Defendant before trial.

## ARGUMENT

A. <u>Nature and Circumstances of the Offense Charged</u>

The nature and circumstances of the offense weigh heavily in favor of detention.  Not only are the charges against the Defendant serious crimes with an inherent risk of danger to the community, the particular circumstances concerning the offenses underscore the threat he poses to public safety.  The charged offense also show that the Defendant is a serious flight risk.

The Defendant has been complainted for Assault on a Federal Officer, as well as, and even more concerning, doing so using a Deadly Weapon, his car.  18 U.S.C. § 111(a), (b).  The first time law enforcement tried to stop the defendant, at the Citgo, instead of stopping, he assaulted HSI Special Agent Michael Grys with his car, striking him in the leg.  The second time, the very next day, the Defendant again used his car to attempt to flee form law enforcement, this time almost hitting Deputy Marshal Daniel Benson, who was trying to get out of the rear driver's side door of the Marshals' SUV when the Defendant rammed the SUV.  Deputy Benson had to jump up onto the hood of the Defendant's car to avoid being hit.

In addition to the Defendant's willingness to attack law enforcement officers with his car, the Court should also consider the potential penalty he faces upon conviction for the charged offenses.  Violations of 18 U.S.C. § 111(a) and (b) carry up to 20 years in prison for each count. 18 U.S.C. § 111.  The significant prison time the Defendant could serve further underscores the seriousness of his offenses and their dangerousness to the community – and only adds to the Defendant's incentive to flee.

The Defendant's repeated attempts to flee from law enforcement clearly demonstrate that he is a flight risk. He attempted to elude police not once, but twice in twenty four hours by attacking them with his car. He is both a danger to society and a serious flight risk and should be detained pending trial.

B.   Weight of the Evidence

The overwhelming evidence against the Defendant weighs in favor of detention. Multiple law enforcement officers, including HSI Special Agent Michael Grys, who the defendant struck with his car, observed the defendant driving his car in the Citgo parking lot and hitting HSI Special Agent Michael Grys. In addition, the incident was captured on both surveillance cameras at the Citgo and by body worn cameras worn by the agents. The defendant is clearly visible getting out of the car just minutes before the assault in surveillance video. In addition, the car was apparently rented to his mother, further connecting him to the vehicle.

And then, the following day, the Defendant was seen driving the very same car by U.S. Marshals. When he is stopped, he again tries to flee by hitting the Marshals with his car, resulting in significant damage to the Marshals' SUV. This time, he is arrested in the driver's seat of the car, the exact same place he was the night before in the Citgo station.

The evidence against the Defendant is compelling and strongly supports pretrial detention.

C.   History and Characteristics of the Defendant

The Defendant's history and characteristics weigh heavily in favor of detention as well. The Defendant's history shows that he is a clear danger to the community. To begin with, this is not even the first time that the Defendant has been arrested for using his vehicle to try and flee from law enforcement. In 2023, the Defendant was arrested for Attempt By Driver to Elude

13

Uniformed Police by Failing to Stop. Just two months later, he was arrested in Washington, DC for Carrying a Pistol Without a License and Felon in Possession of a Firearm.

The Defendant's history shows that he is also a significant risk of flight. As noted above, this is not the first time he has attempted to flee law enforcement using his car. In addition, he appears to be currently on probation for CDS Possession and Disorderly Conduct in Prince George's County, MD. Furthermore, in his previous conviction for Carrying a Handgun in Upper Marlboro, Maryland, the Defendant was sentenced to additional time in prison following one or more probation violations.

D.   Nature and Seriousness of the Danger to Any Person or the Community

The nature and seriousness of the danger to any person or the community that the Defendant's release poses also strongly support pretrial detention. The Defendant's conduct here demonstrate that his conditional release would pose a danger to the community. Not only is the defendant willing to attack law enforcement with his car, but on the second arrest, law enforcement reported that the defendant was clearly intoxicated when he was arrested, meaning that he had been driving while under the influence. The Defendant should not be allowed to continue his criminal conduct.

## CONCLUSION

For the foregoing reasons and given the assessment of all relevant factors, the government respectfully submits that no condition or combination of conditions will reasonably assure the appearance of the defendants as required, nor the safety of the community in this case. Accordingly, the government respectfully requests that the Court grant the government's motion to detain the defendant pending trial.

        Respectfully submitted,
        JEANINE FERRIS PIRRO
        United States Attorney

BY:   */s/ Peter V. Roman*
        Peter V. Roman
        Assistant United States Attorney
        D.C. Bar No. 984996
        (202) 252-7115
        Peter.Roman@usdoj.gov
        U.S. Attorney's Office for the District of Columbia
        601 D Street NW, Washington, D.C. 20530

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing to be served upon counsel of record via the Electronic Case Filing (ECF) system on August 27, 2025.

By:    */s/ Peter V. Roman*

       Peter V. Roman
       Assistant United States Attorney